UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Victor M. Gonzalez,                                              No. 14-cv-1263 (JRT/LIB)

        Petitioner,

    v.                                                                    **REPORT AND RECOMMENDATION**

United States of America,[1]

        Respondent.

---

This matter comes before the undersigned United States Magistrate Judge upon Petitioner

Victor M. Gonzalez's Petition for Writ of Habeas Corpus, [Docket No. 1]. The present case has

been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28

U.S.C. § 636 and Local Rule 72.1. For reasons discussed herein, the Court recommends that

Petitioner Gonzalez's Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that

the present action be **DISMISSED with prejudice**.

## I.    BACKGROUND AND STATEMENT OF FACTS

On or about April 24, 2014, Petitioner Victor M. Gonzalez ("Petitioner"), an individual in

the custody of the Federal Bureau of Prisons (BOP) currently housed at the Federal Prison Camp

in Duluth, Minnesota ("FPC-Duluth"), proceeding *pro se*, filed a Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2241. (Petition [Docket No. 1]). Petitioner argues that the BOP

unlawfully deprived Petitioner of certain "good conduct time" and that, as a result thereof,

Petitioner faces detention beyond his lawful release date. (Id.)

---

[1] In its Response to the Petition, [Docket No. 4], Respondent, the United States of America, notes that Petitioner
should have named Christopher Nickrenz, Warden at FPC-Duluth, as the sole Respondent in the present case,
pursuant to 28 U.S.C. §§ 2242 and 2243, and Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Court agrees and
so substitutes.

Petitioner challenges the constitutionality of a BOP disciplinary proceeding that resulted in (1) the determination that Petitioner committed a Code 112 BOP violation, namely, Use of Alcohol; and (2) Petitioner's deprivation of good conduct time. Petitioner argues that the BOP unlawfully deprived Petitioner of good conduct time as a result of a positive ethyl glucuronide test. (Id. at 3). Petitioner argues that the test, while indicative of alcohol use, did not unequivocally indicate Petitioner's *intentional* alcohol use,[2] and the BOP failed to confirm the test prior to penalizing Petitioner and deducting good conduct time, in violation of Petitioner's due process rights. (Id.) Petitioner argues that the BOP did not afford Petitioner a "full appeal process," also in violation of Petitioner's due process rights, and Petitioner requests the Court reinstate Petitioner's good conduct time and return Petitioner to home confinement. (Id.) Petitioner represents that he has exhausted all available internal, administrative remedies. (Id. at 5).

Petitioner is currently serving a 57-month sentence, to be followed by five years of supervised release, for Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960. (Buege Decl. [Docket No. 5], ¶ 3). Petitioner's current projected release date is January 6, 2015. (Id.) Petitioner participated in the BOP's Residential Drug Abuse Program (RDAP) from October 12, 2012, to July 3, 2013, while incarcerated at FPC-Duluth. (Id. ¶ 4). On July 16, 2013, the BOP transferred Petitioner to the Behavior Systems Southwest Residential Reentry Center (RRC) to complete the Transitional Drug Abuse Treatment (TDAT) component of RDAP. (Id.) On August 7, 2013, the BOP placed Petitioner on home confinement. (Id.)

On November 3, 2013, Petitioner submitted a sample for urinalysis; the sample was sealed, assigned a specimen number, and packaged in front of Petitioner. (Id. ¶ 5). The Redwood

---

[2] Petitioner appears to allege that the positive test result may be attributed to Petitioner's use of "common rubbing alcohol" or ingestion of over-the-counter cough medicine. (Petition [Docket No. 1], at 8). Petitioner alleges that "[n]either of these was listed as prohibited in literature provided by the halfway house staff." (Id.)

Toxicology Laboratory performed an ethyl glucuronide test, and on November 12, 2013, at approximately 8:12 a.m., Petitioner's sample tested positive for alcohol (ethanol). (Id.) The BOP subsequently charged Petitioner, by an incident report, with Use of Alcohol, a Code 112 BOP violation. (Id., Attachment B). BOP personnel gave Petitioner a copy of the incident report and advised Petitioner of his rights. (Id. ¶ 6). During the investigation that followed, Petitioner stated that he drank Dayquil on November 2, 2013, because he was not feeling well. (Id.) He stated that he was unaware that Dayquil contained alcohol "because it was non-drowsy." (Id.) Petitioner further stated that he was unaware that rubbing alcohol and over-the-counter cough medicine were prohibited substances. (Id.) However, BOP personnel provided inmates/residents at RRC, including Petitioner, with a copy of the facility rules and regulations, advising residents that use of alcohol in any form by any person within the custody of the BOP is strictly prohibited, including alcohol in the form of cologne, mouthwash, perfumes, after shave, rubbing alcohol, and any over-the-counter medicine containing alcohol (e.g., Nyquil). (Id.)

Upon completion of the investigation of Petitioner's charged violation, the investigator believed sufficient evidence existed to support a finding that Petitioner had committed a prohibited act. (Id. ¶ 7). Petitioner subsequently received two forms, titled Inmates Rights at Center Discipline Committee Hearing and Notice of the Center Discipline Committee Hearing. (Id., Attachment C). The forms advised Petitioner of his rights before the Center Discipline Committee, the opportunity to request a staff representative, the opportunity to call witnesses, and his right to administratively appeal the decision. (Id. ¶ 7). Petitioner did not request a staff representative or any witnesses prior to the hearing and affirmatively waived the 24-hour written notice of charges prior to the hearing. (Id., Attachment D).

Petitioner appeared before the Center Discipline Committee on November 13, 2013. (Id. ¶ 8). Petitioner was advised of his rights and admitted the charge, stating that he drank a Wal-Mart brand of Nyquil. (Id.) Petitioner did not request a staff representative or call any witnesses at the hearing. (Id.) The Committee determined that Petitioner committed the prohibited act and recommend loss of good conduct time and removal of Petitioner from home confinement. (Id., Attachment E).

A Discipline Hearing Officer (DHO) received Petitioner's incident report and the Committee's findings for certification, reviewed the materials to ensure compliance with applicable discipline policies and due process, and completed the "Checklist for CDC Certification" on December 6, 2013, signing and dating the report and certifying compliance with all applicable disciplinary requirements. (Id. ¶¶ 9-10, Attachment F). The DHO found Petitioner guilty of committing the prohibited act. (Id. ¶ 10).

The BOP has established an administrative remedy protocol that affords federal inmates the opportunity to voice concerns and appeal decisions concerning their confinement and provides BOP staff an opportunity to resolve issues internally before an inmate seeks relief via the judicial system. See 28 C.F.R. §§ 542.13-542.18. Pursuant to applicable regulations, Petitioner appealed the CDC findings and DHO certification on January 14, 2014; Petitioner's appeal was denied. (Id. ¶ 11, Attachment G). Petitioner subsequently appealed to the BOP's central office; Petitioner did not receive a response, indicating a denial of his administrative remedy appeal. (Id.) Petitioner exhausted his administrative remedies. (Id.)

## II.   PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner challenges the above-described disciplinary proceeding – the determination that Petitioner committed a prohibited act and the subsequently-imposed penalty – as

unconstitutional, alleging the following due process violations: (1) the toxicology report indicated but did not unequivocally confirm Petitioner's intentional consumption of alcohol, and the BOP did not perform a second, verifying test; (2) the BOP did not inform Petitioner that rubbing alcohol and over-the-counter cough medicine were prohibited substances; (3) the BOP did not inform Petitioner that sanctions for a Use of Alcohol violation could include a return to prison; and (4) the BOP did not afford Petitioner a "full appeal process." Additionally, in his reply to Respondent's Response, [Docket No. 7], Petitioner argues that the BOP never informed Petitioner that BOP rules applied during Petitioner's home confinement and that Petitioner never received a "complete" copy of the DHO report. Petitioner requests the Court expunge the violation, restore Petitioner's good conduct time, and return Petitioner to home confinement.

### A.     Standard of Review

A federal prisoner may petition a federal district court for relief pursuant to 28 U.S.C. § 2241 when challenging the execution of his sentence or the length or duration of his confinement. Jones v. Jett, No. 10-cv-4201 (MJD/AJB), 2011 WL 5507222, at *2 (D. Minn. Aug. 12, 2011) report and recommendation adopted, No. 10-cv-4201 (MJD/AJB), 2011 WL 5408009 (D. Minn. Nov. 8, 2011) aff'd, 470 F. App'x 522 (8th Cir. 2012) (citing Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002); Mcintosh v. U.S. Parole Com'n, 115 F.3d 809, 812 (10th Cir. 1997) (holding that a federal inmate's challenge to a loss of good time credit is properly brought under Section 2241 because it is a challenge to an action affecting the fact or duration of the petitioner's custody)). In the present case, Respondent acknowledges and represents that Petitioner has appropriately exhausted his administrative remedies with respect to the issue presently before the Court, and Respondent agrees that jurisdiction pursuant to 28

U.S.C. § 2241 is proper because Petitioner challenges a disciplinary matter that resulted in a loss of good conduct time and, accordingly, affects the duration of Petitioner's confinement.

The United States Supreme Court has recognized that "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 453 (1985) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)); see also Espinoza v. Peterson, 283 F.3d 949, 951 (8th Cir. 2002) (depriving a federal inmate of thirteen days good time credit as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause).

> Where a prison disciplinary hearing may result in the loss of good time credits, Wolff held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-567). "Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily." Hill, 472 U.S. at 454 (citations omitted). However, an inmate's due process interests are necessarily tempered and balanced against the "legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." Id. at 454-55 (citing Ponte v. Real, 471 U.S. 491 (1985); Baxter v. Palmigiano, 425 U.S. 308, 321-322 (1976); Wolff, 418 U.S. at 562-563).

Accordingly, a federal inmate has received due process if "some evidence" supports a prison disciplinary board's revocation of good time credits. Hill, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. The United States Supreme Court explicitly declined to adopt a more stringent standard for reviewing prison disciplinary decisions, as due process "does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456. The power of federal courts to review the decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir. 1985) (citing Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969)).

**B.     Analysis**

The present record before the Court indicates that the BOP afforded Petitioner due process during the course of the subject disciplinary proceeding. Petitioner received advanced written notice of the charges against him when he received a copy of the written incident report on November 12, 2013; Petitioner expressly declined, in writing, the opportunity to receive *official*, written notice of the charges 24 hours in advance of the CDC hearing. (Buege Decl. [Docket No. 5], Attachment D). Petitioner received a Center Discipline Committee hearing on November 13, 2013, complete with advance notice of the opportunity to call witnesses and present evidence on his behalf at the hearing. Petitioner twice declined the opportunity to have a staff representative appointed and twice declined the opportunity to call witnesses. Finally, following the hearing, the present record before the Court indicates that Petitioner received a

copy of the written CDC decision, specifically setting forth the specific evidence on which the Committee relied in arriving at its decision and its reasons for imposing the chosen sanctions.[3] Petitioner received (1) advanced written notice of the charge, (2) an opportunity to call witnesses and present evidence, and (3) a written statement by the factfinder, satisfying the Wolff requirements and constitutional due process.

Additionally, the present record before the Court indicates that "some evidence" supported the finding of the CDC and DHO. The CDC and DHO relied on the Redwood Toxicology Laboratory's report that confirmed Petitioner's positive UA and Petitioner's admission at the CDC hearing that he drank "a Wal-Mart brand of Nyquil." Because the record identifies evidence that could support the conclusion reached by the disciplinary board, the Court is direct to look no further into Petitioner's evidentiary challenges. As articulated in the standard of review section, supra, the "some evidence" standard does not require examination of the entire record before the disciplinary board nor an independent analysis and/or weighing of the evidence available to the board. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457. The Court finds that "some evidence" support the results of the subject disciplinary proceeding.

## III. CONCLUSION

For the foregoing reasons, and based on all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

---

[3] In his reply to Respondent's Response memorandum, [Docket No. 7], Petitioner argues that he never received a "complete" DHO report, but at no point does Petitioner deny receiving a copy of the CDC report; in fact, Petitioner submitted a copy of the CDC report to the Court with his original Petition, [Docket No. 1-1].

That Petitioner Victor M. Gonzalez's Petition for Writ of Habeas Corpus, [Docket No. 1],

be **DENIED** and this action be **DISMISSED with prejudice**.

Dated: January 5, 2015                                  s/Leo I. Brisbois
                                                        Leo I. Brisbois
                                                        U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 19, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by February 2, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.